May I please the court? Good morning, my name is Jesse Gesson. I'm from the Office of the Attorney General's Office. I'm here today to talk about Rule 16. This case is about a violation of Rule 16. Rule 16 provides very simply that the government must provide notice upon the defendant's request. The defendant requested on two occasions that the government provide notice. The government's notice came in the form of an email on Thursday at 4.45pm before a trial on Monday. What did the email contain? I don't know that we have it in the record. It's not in the record. It contained, would the court's indulgence? Yes. It contained simply a one line statement that says attached please find documents relevant to the case of U.S. v. Renard case number 2753. It came in October 25, 2007 at 4.45pm and it was sent by Diane Haynes, paralegal specialist in the United States Attorney's Office District of the Virgin Islands. And what was the attachment? The attachment was a curriculum v. Mr. Brian Jones and a conclusory statement concerning the fingerprint analysis that he had conducted. It did not contain a basis for that conclusion or any sort of analysis for the conclusion. Do you have that there or is that an extra copy? Yes, I do. Is that an extra copy with the attachment? Yes, may I approach? Could you hand that to the court please for a moment and how he said that? Yes, Your Honor. Now, the appellant's response was to write an email saying we do not accept service of process by email. The Federal Rules of Criminal Procedure 49B incorporates the civil rules. The civil rule provides that electronic notice can only be provided pursuant to the civil rules if prior written consent is given. No prior written consent was given and indeed the appellant specifically denied consent to service of process by email. Would it have made any difference if you got proper service? No, it wouldn't have, Your Honor. One business day before a trial for an expert, a fingerprint expert, is not sufficient. Indeed, it turned out that there was two fingerprint experts that had given reports on the fingerprint analysis before this expert. This was the third expert. So in order to – That's not in the record. How do you know that? That is in the report – the conclusory report that's given by Mr. Jones. Mr. Jones at one point says there is – it is in the record a statement that he had – that there was a prior analysis done but that he did an independent analysis. Of course, then he moves on to say that he's working with the ACE – ACEV or analysis – in any case, V stands for verification. So he was actually – When did you learn about the prior experts? On – I learned about it on that Thursday from the email, 4.45 p.m. Now, he testified in trial that he did the examination on Thursday night. Well, I don't believe – that's not possible because he had – I had received the email at 4.45 p.m. So with his analysis, so I believe it may have been the – And you did this examination on Thursday night? Yes, sir. These were inked fingerprints that I examined. Look at 124. And then maybe not Wednesday night. Maybe he was confused. Maybe, Your Honor. I'm not exactly sure. I know that he did it on short notice. That's the only doubt. Now, the trial started on Monday. Correct. How long was the trial? One day. All right. So the trial judge faulted you for not raising this at the beginning of the case and waiting until the expert was offered. But we're not talking about a three-week trial here. No, and here's the thing. The trial judge did not fault me for not raising it before trial. The government faulted me for not raising it before trial in the brief. Now, that would have meant that I would have had to file a motion to continue on the Friday. But my question is why did the burden on the person who's being prejudiced by the breach have to file for a continuance? Shouldn't the government have filed a continuance so that proper notice could be given under Rule 16? That's a good point, but why didn't you make an application for the continuance before anything occurred at all in the trial? Because I did not open the email. I did not accept service of process by email. But so you went to trial on Monday and had no idea that the government was going to call a fingerprint expert. I received the paper copy of the documents in the box, in the district court box, on Monday morning and reviewed them and then went into trial. Well, I don't think you're answering Judge Blanton's question. You had the fingerprint cards. Did you have notice that an expert would be called? Well, that's a good question, and the answer is simply that just because somebody provides discovery, which includes something that may be analyzed by an expert, are we then supposed to devise an entire trial strategy based on the possibility that an expert may be called? My strategy in this case was that the government could not prove the prior deportation because they were not going to call an expert because they had not received notice under Rule 16. Now, the purpose of Rule 16 is exactly this – effective cross-examination and building a trial strategy. I don't mean to lessen the extent of your surprise at getting this information so late and in violation of the time periods provided by Rule 16. But the point is that you knew that that was going to happen when you went in. Let's assume hypothetically that a jury was going to be selected and that this trial was going to go more than one day. I mean, don't you have a responsibility to say something up front before anything occurs, before any witness is sworn in, to say, I just got this notice. I'm not prepared. I requested a few minutes. Well, Your Honor, I believe that the burden should be on the person violating the rule to give notice that they violated the rule. My position is – But the prejudice is to you, isn't it? Yes. Well, Your Honor, that depends. The prejudice is based – the prejudice is created and should be alleviated by the government. So my entire trial strategy is – and granted, this case did not have many holes for a trial strategy. It's an illegal reentry case. So when I see a hole like that, I jump through it full bore. And what I did was decided to come out of the box in the opening statement with they can't prove prior deportation because there's going to have to be proof, and they can't prove it. You're saying you took the position that the notice was a nullity in effect because it was not properly given, so therefore they could not – they would not be able and would not even try to put this evidence on. Exactly. Did you ever prior to trial get a report that complied with the expert – with the rules? No, and here's why. Because there was never a report made. The – Mr. Jones admitted that he did the entire analysis in his head and did not produce a report. The voir dire, which – the court's remedy in this case was to allow voir dire in wide latitude cross-examination. The voir dire exposed, and indeed, the defense expert – I mean the government expert admitted that I would need an expert in order to challenge his conclusion because there was no report. There was no level ridge analysis. There was no nothing saying, okay, well, this fingerprint matches this fingerprint. You did have copies of both fingerprint cards well before you were served with the notice of expert being awarded? Correct. I mean isn't it typical that the government is going to call an expert in a case like this? Your Honor, as a criminal defense attorney, nothing is typical. I submit that I see something like this, and I jump through it. There's just – if I'm going to rely on an assumption for my trial strategy, I consider that to be ineffective. So you consider the district court's accommodations or response to be inadequate? Your Honor, the court just granted a one-week continuance. We probably wouldn't be here right now. I would have been able to get in contact. The jury had been selected. The jury had been selected, but a one-week continuance with – the jury was not sequestered. The jury – it was a one-day trial, so the jury could have easily gone home at lunch, said, okay, we're going to come back next Monday. They could have remained under oath. I have one last question because I see our time is up. Our cases, the collection of cases, require that you show prejudice and by prejudice. The courts have said in Lopez's case specifically that you have to show that the outcome would have been different if the government had followed the proper discovery schedule. What is the prejudice in your case? Your Honor, if I may answer the question and conclude at this point. The prejudice is threefold. One is lack of ability to effectively cross-examine. Two is lack of ability to provide a – to change trial strategy on mid-trial because I did rely on no notice and I did an opening statement state that I wanted the court – the jury to focus on the prior deportation. How would the outcome have been different had the government complied with discovery rules? If they had complied with the discovery rules, the outcome would have been different because it's very possible – well, Your Honor, may I address this in my rebuttal because I believe that the answer deserves a significant amount of time? Well, no, answer it now because rebuttal – your opponent will have the opportunity to challenge that. So we'll give you another two minutes and – Your Honor, I could have – knowing full well that there had been three possible – three possibly different conclusions or analysis of this fingerprint, I could have actually created reasonable doubt inside that specific witness by saying, well, why was there a report that was never turned over to me done by the first fingerprint analysis? Why was there a second person who looked at his fingerprint analysis? Why are neither of them here? Why are you here today without a report and just being given notice of two days? But I wasn't allowed to go into the timing by the court. Every time I tried to go into timing, twice during cross-examination and once during – by closing, I was not given the chance. I was cut off. Had I been able to effectively cross-examine and investigate the witness and the expert, then it's very possible that my client would be walking free today. Would you have sought your own fingerprint expert? Your Honor, I see my time is way up. May I – Please respond to the question. And you have time. You have another minute because we've given you another one. Okay. Thank you. You have one minute. I certainly would have consulted a fingerprint expert. I think that a basic modicum of evaluation either in determining the reputation of the expert that was put on the stand and or his conclusions I think would have been just and proper under the circumstances. Was there a pretrial order entered in – customarily, when I was a district court judge, I would enter a pretrial order saying when discovery ended, when expert reports had been exchanged, if at all. Was there such a thing here? Yes, there was, and I believe it was October 1st. Was the – And there was a deadline for exchange of expert reports. It doesn't say specifically expert reports, but it says all discovery is supposed to be turned over by X date, and I believe that's in the record as October 1st, but I don't remember the exact date. But it was – they were definitely in violation of that scheduling order, and the court recognizes it as such. What's Remnard's current status? He – I'm not sure. I believe he's back in Haiti. He was sentenced to time served, right? He was sentenced to time served, but, Your Honor, if we look at the punishment that the person received and determine our result of the law based on that punishment, then aren't we – aren't we essentially making the law a nullity? All right. We'll go. Thank you, Your Honor. Good morning, ladies and gentlemen of the court. Your Honor, my name is Alfred Potter, and I am representing the United States in this matter. Your Honor, right off the bat, the government concedes, here as we did at trial, that there was a late turning over of the expert report. We concede that. Then why should there – why should we not permit time for Mr. Remnard's defense to consider that report since there was a violation? Well, ultimately, Your Honor, I would say, yes, if counsel for Remnard made his request for a continuance prior to trial, the government would have had more objections. Well, but couldn't he rely upon the fact that he told you he didn't accept service, so you had not given it to him before trial, so you presumably would assume that you can't call that business. Well, the government did not make that assumption, Your Honor. We didn't, and as often do. We send information to the public defender's office by email every day. Every day, Your Honor. But do you send expert reports on the eve of trial, either email or by hand? Your Honor, we sent the expert report the exact day that we received it. That's not the point. You should have received it a month before and turned it over. You know, you can't say that because you got it, you know, what if you got it on Sunday? We got it on Sunday. You didn't have it. It's not like he did the examination a month before and was dilatory, the expert. He examined it Thursday night. That, you know, that was of your own making, was it not? Technically, yes, Your Honor, even though the expert was not someone who was on St. Thomas. It was someone who was in the United States. The request had been made prior. As a matter of fact, the request was made at the grand jury indictment. The day after the grand jury indictment, the request was made for that information. I must tell you, it seems to me like trial by ambush. I think that the government, when this request was made, even mid-trial, should have said, yes, we'll give the time because this man deserves the time to put on a defense. To me, it seems wrong. I'm not saying that's the way I would rule because there are other factors, and the district court did look at that fate, et cetera, but it just seems to me, you know, from one judge talking to a prosecutor's office, it seems to me there's a better way to do this, both in terms of getting this type of evidence and delivering it, but then acknowledging during trial that the defense deserves time to figure this out. Well, Your Honor, again, if the request was made prior, we acknowledge that the documents were received late. We do not run from that admission. Could you respond to Mr. Gessen's comment that the problem was not of his doing, but was of the government's doing, and that maybe you should have gone to court firstly in the morning on Monday and said, we just turned over discovery. It's late. We ask for a continuum. Alternatively, that may have been something that we will do depending on the circumstances and the nature of the case. This is a simple re-entry case where the issue of fingerprint analysis is the cornerstone of the case. Exactly. And as of Thursday, four days before trial, the defense assumed that you probably were not going to be able to prove your case, right? That's their contention, Your Honor. My contention is that it was purely trial strategy on the defense part. They got the report. They wanted to ignore the report, pretend that it wasn't there so that they could come to court, jump up and say, Your Honor, we never received this report. The defense could have done that on the eve of trial. They could have done that Thursday. They could have done that Friday. Monday morning, they could have come to court and they could have done that. Assuming that was the strategy, you could have avoided that strategy by going to court firstly Monday morning and telling the judge that you did not comply with Rule 68. Well, Your Honor, considering that we did place the notice of information in the box on Thursday, that we sent the email on Thursday, it surprised me. Even though the defense said, well, we're not going to accept anything by email, it was still in this box. You had no trouble agreeing that you did not comply with Rule 68. No problem at all. You mentioned before that the fingerprint testimony was the cornerstone of the case. Would it not be prejudicial to a defendant not to be able to call a fingerprint expert because of your not failing to comply with Rule 68? The failure to comply technically with Rule 16 in no way prevented this defendant from calling his own expert. But he didn't know that you were going to have an expert. So why should he pay for an expert to be ready to testify when he got your notice on Thursday? I received the notice on Thursday. He knew that we were going to call an expert, Your Honor. He didn't know much more than that. The report really doesn't say a whole lot. It just says what he will testify, that these were analyzed, and it doesn't say a whole lot. He didn't get the summary of what the expert was going to testify to. He only apparently only got fingerprint cards and the name of the expert. So if he's going to get his own expert, he has to turn over your analysis to his expert to be prepared. And I don't think one business day or two business days would be sufficient for that. Well, Your Honor, the defense had the fingerprint cards from the 1989 deportation and the fingerprint cards from the 2008 detention from at least three weeks to a month prior to trial. So your view is that he should have taken those cards and given them to his expert and have an expert writing in the event that the government was going to call an expert? Yes, in the event that the government was going to call an expert. And it would be unreasonable for the defense to assume that the government is not going to call an expert when that is the only way that we can prove our case. Did the defense have any notice that you were going to call an expert? Aside from the service of the report, did you tell them? Was there any writing at all that you were definitely going to call an expert? Our contention is that the mere fact that we gave the defense the fingerprint comparisons and that this is a re-entry case where the only proof that really needs to go forward is that the person who was arrested in the original deportation is the same person here in court today. The defense was on notice that we were going to call an expert. And they could close their eyes and say, well... They might have assumed you showed the cards to the jury and everybody could say, oh, of course, they're the same. As soon as the defense consulates you, I'm certain that he knew that that was not going to be the strategy of the government. Could you detail briefly what the problem was with the fingerprint? Initially, there was... Now, why was it so late? I assume you made your request well before you received the results. Well before... And we continued to make requests to the agents. And I was always under the assumption that the report was coming, but as time went on and I realized, well, I still have that misreport, then I found out through the agent that the person who did the original report, the original analysis, was not going to be able to testify. And the documents were given to someone else in the office to analyze. And apparently that person didn't get around to analyzing them until the Thursday before trial. Can I ask you what this means? And Judge Prentice hasn't seen this. The last paragraph says, Brian Jones is prepared to testify. The examination conducted by Acting Group Supervisor Brian Jones is a verification of the exhibits in question. The original exhibits were examined by Senior Fingerprint Specialist Dean Rohn and verified by Senior Fingerprint Specialist James Johnson as part of the laboratory quality control process. The verifications are an independent examination of the prints utilizing the ACE-B methodology. What does that mean? The initial examiner examined the documents. My understanding is the way it works, the supervisor has to approve his analysis, has to confirm his analysis.  and was he the one using the methodology? Yes, at trial, Brian Jones acknowledged that he did his own independent analysis of the documents. I think there was a question from either the court or defense counsel whether or not his analysis was just a verification of a prior analysis. And he made it clear in the record that no, his analysis was an independent analysis. Independent of anything that was done previously. And I should put that in the records now. The mere fact that the objections to the introduction of the experts came in the middle of trial, prior to that, the deportation officer had testified. And across examination, the issue from defense was never to question whether or not this person that was deported in 1989 was the very same person that was in court. The issue was whether or not Mr. Renard had waived his rights in 1989 to go to an immigration judge. So even at that point, at that point, to me it was a concession that yes, this person that was deported in 1989 is the very same person that is in court today. This was before a jury was at? Was there any opening statement to the jury? No, that was during the testimony of the deportation officer Rogers. I think that's on page, somewhere on page 77. You said that was his trial strategy, but how do you know that that was his strategy at the trial that started on Monday? Well, the mere fact that the defense waited until the middle of trial to object, to bring to the court's attention. But he never conceded that this was the same person, did he? Based on the question that was asked to the agent across examination, I interpret it to be a concession on his part that it was the very same person. Counsel, your adversary addressed the prejudice. Is there prejudice here? There's absolutely no prejudice. Even if there was a continuance for a week or two days or whatever, the analysis would not have changed. That Volker Knott, Andrew Seeland, Jean-Pierre Durand was one and the same person. And no amount of time given to this defendant to hire his own expert to redo the cross-examination of Mr. Brian Jones would not have changed the outcome of this case one single bit. How do you know that another expert hired by the defense would not disagree with your expert and say that these prints do not match and that, therefore, it's not the same person? Well, your Honor, I don't know what some other expert concludes that would have been. Well, that's what Mr. Gesson says is that he didn't have a chance to do that. He did have a chance to do that. He just chose not to do that. He chose not to use his strategy not to do that and hoping to come into court and get a continuance or get the evidence kicked out. That was his strategy and it failed. And because he waited until the middle of trial, evidence had already come into court. Well, in the middle of trial, what are we talking, sometime on Monday? Sometime on Monday, Your Honor. But the main agent that testified, the deportation agent, he had testified. He was cross-examined. And again, it wasn't the identity issue that was the issue for cross-examination. Well, but it was something that you had the burden of proving it was the same person, which you did through the expert. Which I did through the expert. What is the ACE-B methodology? Is that a visual examination? It's a visual examination from one known trait to the next. So the agent goes back and forth and he compares the known trait from 1989 to the known trait for 2007. Is it scientific in terms of measuring or is it a visual? It sounded to me like it was not as rigorous an examination as some might do. Do you agree to that? I agree. And I think the reason that it may not be as rigorous is because it's comparing known traits. If it wasn't that they were lifting a trait off of a surface and they were comparing that unknown trait to a known trait, maybe the analysis may have needed to be a bit more rigorous. These were two known traits from the same individual. Well, no, you have to prove that they're from the same individual. Well, that's true, yeah. It's assumed that they're from the same individual and the expert did his analysis. It sounds like a subjective analysis that depends on the person's view of what the matches are. Is there a more precise scientific way of comparing different traits? Well, I'm not an expert so I can't answer that question. Well, in your experience, from what – no, seriously. From listening to the agent, this is the method that they use and this is a federal agency. This is the method that they use and they find it to be very reliable. And again, the defense has no prejudice whatsoever because I think it was conclusively shown that Barbara Pinard, Andrew Seeler, Jean de Martyr were all one and the same individual. And no amount of additional time, no amount of expert would have changed that fact. But let me ask you a question. There was no person who identified them as being the same in court. I mean the sole evidence of the – that they were the identical person was the fingerprint. Is that not correct? Was the fingerprint, yes. All right. Thank you. Thank you very much. Thank you. Mr. Kasper? Thank you, Your Honors. I'd like to address the issue of the analysis concerning whether or not there's a more scientific approach. The ACE-V methodology requires V as in verification because it is more subjective. There's a point system that I was – I thought originally, and you see in the transcript, I start asking about points because this court's decision in the United States v. Mitchell lays out an entire history, an exhaustive history, and it's basically a scientific read in and of itself. Is that Judge Pollack's opinion? I believe it was Judge – it was Judge Greenberg, Berry, and I believe Pollack. I'm not sure, but I believe so. And so in that decision, after five days of testimony at the district court level – no, it was actually Judge Becker, I believe. It was Judge Pollack on the trial court. Okay, okay. Judge – so Judge – you know, there's this exhaustive opinion by, I believe, Judge Becker. And he lays out – he says the ACE-V methodology requires verification because it's less subjective than that which is used for latent analysis, which is the point methodology which came with the Galenian system or taxonomy system that was originally designed back in the – I don't know. We can read that opinion. In any case, my point is this, that this expert decided to do an analysis that was more subjective. He had two experts before him that did an analysis, one of which produced a report. To this day, I've never seen a report. I've never gotten an explanation of why those experts didn't come in. What if those two experts had decided that the analysis didn't fit and that the third expert was called in to do an analysis that did fit? When you say two experts, you mean what I was reading from that last paragraph? That's right. And to this day, there was a report produced, but we've never – I've never seen the report. Well, it says it's part of a laboratory quality control process, so I don't know that there really was – I don't know whether that's departmental oversight or whether there actually were reports. Well, I believe that at the – during – in the record during cross-examination, the – Mr. Jones did say that there was a previous report and that he had actually reviewed the report. Now, what he said was, I don't recall whether or not I relied on the report or discussions with the previous analyst in order to determine whether or not there was a match. That's what he said. He said he could not recall. Then he was asked by the judge, well, did you do an independent verification? Yes, I did an independent verification. But he could not recall whether or not he had relied on that analysis in his independent verification because he could not recall whether he had discussed the actual analysis in comparison. I don't have a time on this. It's just going. That's all right. And we can read that. I think it's in the appendix at 126 to 120, and we can read that first.  Well, thank you, Your Honor. For the reasons stated, we please ask that we pray that the court reverse the lower court's decision and fine for the appellant. Thank you. Thank you. Thank you, counsel. The case was well argued. We'll take it under advisement. Thank you. Thank you. We'll call our next case, Juan Morales v. Son, Constructors, Inc.